OPINION
Alonzo Wilcox was found guilty by a jury in the Montgomery County Court of Common Pleas of three counts of assault on a corrections officer and one count of harassment by an inmate. He was sentenced to imprisonment for one year on each count, with the assault convictions to be served consecutively to each other but concurrently to the harassment conviction.
The events giving rise to the indictment against Wilcox occurred on January 12 and 14, 1998, when Wilcox was alleged to have engaged in a string of assaults on and harassments of corrections officers at the Dayton Correctional Institute ("DCI"). The facts surrounding these offenses will be discussed in detail under the second assignment of error. Wilcox was indicted on July 9, 1998 on two counts of harassment by an inmate in violation of R.C. 2921.38(A), three counts of assault on a corrections officer in violation of R.C. 2903.13(A), and one count of possessing a deadly weapon while in detention in violation of R.C. 2923.131. He was tried by a jury on October 13 and 14, 1998. Wilcox was acquitted on the possession of a deadly weapon count and one of the harassment counts, but he was found guilty of the remaining offenses and was sentenced as set forth supra. He raises two assignments of error on appeal.
I. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
Wilcox claims that he was denied the effective assistance of counsel because his attorney did not object to the court's interruption of his closing argument and did not object to the length of the pre-indictment delay.
To prevail on a claim of ineffective assistance of counsel, Wilcox must demonstrate that counsel's performance fell below an objective standard of reasonableness and that "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."Strickland v. Washington (1984), 466 U.S. 668, 688, 694,104 S.Ct. 2052. See, also, State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus.
Toward the end of defense counsel's closing argument, the judge stated counsel's name in an apparent effort to get his attention. The purpose of the interruption is unclear from the transcript, but the parties seem to agree that the judge was attempting to remind defense counsel of the time limits agreed upon for closing arguments. Counsel responded by saying, "Yes. Okay. Yes, Your Honor. Let's speed up."[1] Counsel did not object to this interruption, and Wilcox now claims that he should have. In our opinion, however, the interruption was an innocuous one, and counsel could have made a reasonable, strategic decision either that no objection was warranted or that taking issue with the interruption in front of the jury would not benefit his client. Thus, counsel's performance did not fall below an objective standard of reasonableness in this regard. Moreover, we are wholly unpersuaded that the result of the proceeding would have been different if counsel had objected to the interruption.
Wilcox also claims that counsel was ineffective because he did not object to the delay between the dates of the alleged offenses on January 12 and 14, 1998, and the indictment on July 9, 1998. Wilcox asserts that the "State's six month delay in indicting Appellant materially hampered his ability to obtain witnesses of the various circumstances."
In order to prevail on a claim of pre-indictment delay, Wilcox was required to show that he suffered actual, substantial prejudice as a result of the delay. State v. Whiting (1998),84 Ohio St.3d 215, 217, citing United States v. Lovasco (1977),431 U.S. 783, 97 S.Ct. 2044. Wilcox fails to indicate what, if any, evidence had become unavailable to him due to the delay or how he was prejudiced thereby. Because we have no basis upon which to conclude that Wilcox was prejudiced by the pre-indictment delay, we cannot conclude that counsel was ineffective in failing to object to the delay.
The first assignment of error is overruled.
 II. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Wilcox argues that his conviction was against the manifest weight of the evidence because conflicting evidence was presented at trial.
When a conviction is challenged on appeal as against the manifest weight of the evidence, we must review the entire record, weigh the evidence and reasonable inferences, consider witness credibility, and determine whether, in resolving conflicting evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387, citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, unreported. Appellate courts should reverse a conviction as against the manifest weight of the evidence only in exceptional circumstances. Martin, supra, at 175. The state presented the following evidence at trial.
DCI Lieutenant Supervisor David Velte and Corrections Officers Gilbert Scroggy and James R. Washington each testified regarding Wilcox's conduct at a January 12, 1998 Rules Infractions Board hearing about his recent rules violations. According to Velte, Scroggy, and Washington, Wilcox spit on the disposition report that he was asked to sign, spit on Velte, and called Velte a "white racist bastard" before attempting to flee from the room. Wilcox shoved his way through the door of the room "takin' [Scroggy] with him" out into the hall, where Wilcox attempted to run to the recreation yard. As Scroggy attempted to hold Wilcox in an "armlock," Wilcox kicked Scroggy in the shin and then raised a foot to kick Velte in the abdomen as Velte attempted to assist Scroggy. Scroggy was then able to wrestle Wilcox to the floor and restrain him. Wilcox was indicted for harassing Velte and for assaulting Velte and Scroggy as a result of this incident.
DCI Corrections Officer Jimmy Sexton testified about a second incident on January 12 involving Wilcox. According to Sexton, Wilcox had to be moved from his cell that evening because of damage he had caused to the cell. "[O]ne bracket on the window frame on the exterior of the door [to the cell] had been — the rivets had been popped out of it from excessive pounding on the window" by Wilcox such that the door was no longer secure. After Wilcox had been removed, Sexton searched the cell and found a toothbrush that had been fashioned into a shank. The discovery of the shank resulted in the weapons charge.
DCI Corrections Officer John Philpot and Corrections Counselor Earl Hill testified about a third incident, which occurred on January 14, 1998. According to Hill, he went to Wilcox's cell to read him the incident report on the discovery of the shank in his cell and to obtain his signature on the report. When Hill approached the cell, Wilcox told him to "get the fuck away from my cell" and threatened to throw urine on Hill. Philpot had seen cups of urine in Wilcox's cell in the preceding days. Wilcox then did throw urine through the food flap in his cell door, drenching the upper part of Hill's pants. Hill testified that he had no doubt that the liquid had been urine based on its smell, and Philpot, who observed the incident, also believed that the liquid had been urine. As a result of this incident, Wilcox was charged with harassing Hill.
Later in the day on January 14, a cell extraction team was sent to remove Wilcox from his cell because he refused to cooperate with prison officials. Chief Security Officer Gary Link and Correction Officer Michael Buehler were members of the cell extraction team and testified about the cell extraction. According to Link and Buehler, Wilcox refused to move away from the door as requested and tried to escape when the cell extraction team stormed into the cell. Wilcox wrapped his right arm around Buehler's neck and took Buehler to the ground. Wilcox tried to choke Buehler with his right arm and left hand such that Buehler had difficulty breathing and feared losing consciousness. Link used pepper spray on Wilcox to subdue him and to free Buehler. Wilcox was charged with assaulting Buehler based on this conduct.
Based on this evidence, we cannot say that the trial court clearly lost its way in convicting Wilcox of assaulting the three corrections officers and of harassing Velte. Although Wilcox presented his own testimony and that of other inmates contradicting some of the salient facts, the trial court obviously found the testimony of the corrections officers to be more credible than that of the inmates. Thus, Wilcox's conviction was not against the weight of the evidence.
The second assignment of error is overruled.
The judgment of the trial court will be affirmed.
GRADY, P.J. and KOEHLER, J., concur.
(Hon. Richard N. Koehler sitting by assignment of the Chief Jusitice of the Supreme Court of Ohio).
Copies mailed to:
Johnna M. Shia
Jay B. Carter
Hon. Barbara P. Gorman
[1] Wilcox claims that the transcript does not accurately reflect the judge's comments and counsel's response, but Wilcox has not attempted to correct these errors as provided in App. R. 9(E). As such, we will presume that the transcript is correct.